### No. ——

### First Circuit

### HOLLIER v. N. O., T. & M. R. R. CO.

(Jan. 7, 1927.  Opinion and Decree.)
(Feb. 12, 1927.  Rehearing Refused.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Obligations—Par. 84, 87.**

A contract for widening a railway embankment which was cancelled by a letter specifying other conditions which the contractor accepted, will have no effect as against the stipulations contained in the letter.

Appeal from Calcasieu Parish. Hon. Jerry Cline, Judge.

Action by R. M. Hollier against New Orleans, Texas and Mexico Railway Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

W. C. Perrault, of Opelousas, attorney for plaintiff, appellant.

Powell & Lecompte, of De Ridder, and George Janvier, of New Orleans, attorneys for defendant, appellee.

MOUTON, J. · Duplechein and Richards were allotted embankment work by defendant company between mile posts 544 and 614 which plaintiff alleges was in violation of a contract he had entered into with the company. He complains that the company by thus violating the contract he had with it, has deprived him of a profit he would have realized on his contract amounting to $300.00, for which he sues. His demand was rejected. October 11, 1922, plaintiff entered into a contract with defendant company for the widening of its railway embankment from mile posts 600 to 610 to 616, 616 to 623.6 and from 623.6 to 625.6. This contract was cancelled by letter of defendant company and its cancellation was accepted by plaintiff.

In his petition plaintiff alleges that under the terms of a contract he had made with the defendant company on January 28, 1924, he had obligated himself to widen the embankment of the company from mile post 544 to 600 for which he was to secure 28c per cubic yard, less 10 per cent to be retained by the company until the termination of the contract to cover indebtedness he might incur and for which the company might be liable. Plaintiff avers further that by a letter written by C. J. Kirkpatrick, chief engineer of the company, dated July 12, 1924, and which was accepted by plaintiff, that the contract he had entered into with the company on January 28, 1924, before mentioned, had been "altered insofar as to ex-tend the area over which the work was to be done to mile post 614 and to change the compensation due the contractor from 28c per cubic yard to 32c per cubic yard, which supplementary contract is evidenced by letter of July 12, 1924". The defendant company in answer avers that under the terms of the contract of January 28, 1924, plaintiff was to widen the road embankment between mile posts 544 and 560 at the rate of 28c per cubic yard with the understanding that the company was to retain 10 per cent for future possible liabilities of the company as above explained, but defendant specifically denies that by the letter of July 12, 1924, written by C. J. Kirkpatrick, engineer of the company, referred to by plaintiff in his petition, that the contract of January 28, 1924, had been altered so as to extend the area of the work to be done to mile post 614. The company alleges that under the terms of the agreement as evidenced by that letter, the contract was so altered as to extend the yardage work as stipulated in the contract of January 28, 1924, from mile post 600 to mile post 602, and from mile post 614 to mile post 616, and not between mile posts 602 and 614.

The letter of July 12, 1924, is as follows:

"Referring to your contract of the 28th of January, 1924, with the New Orleans, Texas and Mexico Railway Company, wish to advise that we will pay you thirty-two (32c) cents per cubic yard for bank widening that has not been completed between Elliot City and mile post 314, and between Hazelwood and Courtableau, and that this will constitute a supplement to above mentioned contract, all conditions apply in the above contract except the price, which applies to the work within the limits above set forth.

"This letter agreement in no way changes any of the provisions of the above mentioned contract except the price and if you are agreeable to these terms, please

sign and return one of the duplicate copies we are sending you."

The figure 314 which appears in the letter was, by agreement of counsel, corrected to 614. It is clearly stated in this letter that plaintiff was to be paid for bank widening that had not been completed between Elliott City and mile post 614 as corrected, and between Hazelwood and Courtableau; and would constitute a supplement to the contract of January 28, 1924, with the exception of the price which had been changed to 32c per cubic yard and as to which there is no controversy. All the conditions of that agreement were to apply, but as again stated in the letter "within the limits above set out". This letter was written by Kirkpatrick, the chief engineer of defendant company, was accepted by plaintiff and was made the basis of his suit as appears from his original petition. It refers directly to the contract of January 28, 1924, and limits the effect of that contract between the points designated and which the evidence shows, comprised an area of about four miles.

Counsel for plaintiff refers to Article C. C. 1949, which says when there is anything doubtful in one contract it may be explained by referring to other contracts or agreements made on the same subject matter between the same parties, before or after the agreement of the parties. The letter of Kirkpatrick of July 12, 1924, refers directly to the agreement of January 28th, and modifies it specifically in reference to the limits in which the yardage was to be done. The letter made no reference to the original contract of October 11, 1922, for the obvious reason that it had been cancelled. There are no other agreements or contracts between the parties, at a time prior or subsequent to the letter of July 12th so far as is disclosed by the record which could explain the agreement embodied in that letter.

Counsel for plaintiff in discussing this subject refers us to the letter written Kirkpatrick by plaintiff on July 5, 1924, and contends that his proposal submitted in that letter was accepted by Kirkpatrick in his letter of July 12th and which was an answer thereto. In the letter of July 5th plaintiff, in making his offer to do the work, referred to the contract of Picket and Hollier which evidently was the original contract of October 11, 1922. This contract was for the widening of the embankment from mile post 600 to 625.6. Evidently, if the letter of July 12th had been an acceptance of that proposal, the chief engineer would not have so scrupulously limited the yardage to the area therein stated. The letter of July 12th, was neither an answer or acceptance of the proposal submitted by plaintiff in his letter of July 5th. It was simply a modification of the contract of January 28th to which it was intended to apply, exclusively.

Counsel for plaintiff cites also Article 1956 Civil Code. This article furnishes a rule for the interpretation of contracts when the intent is doubtful by referring to the construction put upon it by the manner it has been executed by both, or by one with the express or implied assent of the other. We do not think that the intent of the parties is doubtful in this contract as appears by the conditions which were stated in the letter of July 12th and which were accepted by plaintiff as was by him alleged. If its intent were doubtful as contended for by plaintiff, the manner of its execution by both parties, or by one with the assent of the other, would have to be looked into in order to apply the rule of interpretation which plaintiff invokes.

The contract was made with the chief engineer of the company, who was charged with the duty of making agreements of that character. It is certain from the evidence that Kirkpatrick, by the manner in which the contract was executed, never placed a construction upon it which could sustain the contentions of the plaintiff. The work, it is shown, was under the general supervision of Kirkpatrick. Colvin was the assistant engineer, who looked over the local work, and who denies that he contracted with plaintiff to change or modify in any respect, the conditions of the agreement embodied in the letter of July 12th. The fact is that the estimate of the work which was performed by plaintiff was made by Colvin according to the limits which had been specified in the letter of July 12, 1924. Even if he attempted to enlarge on those conditions by the manner in which he allotted the area to plaintiff, there is nothing to show that he was, in that respect, authorized by Kirkpatrick, or that the latter was in any way apprised of such changes. If Colvin attempted to modify the agreement of July 12th by the method in which he executed the work, the company could not be bound, as it never asserted thereto by Kirkpatrick, its authorized agent.

Plaintiff is not entitled to recover for the area which was allotted to Duplechein and Richards.